UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVEN P. HILL,

        Petitioner,                      Case Number: 04-CV-71629

v.                                            HON. GEORGE CARAM STEEH

HUGH WOLFENBARGER,

        Respondent.
_____/

## OPINION AND ORDER DENYING
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Steven P. Hill has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is incarcerated at the Macomb Correctional Facility in New Haven, Michigan, challenges his convictions for armed robbery and two counts of assault with intent to rob while armed. For the reasons set forth below, the Court denies the petition.

### I. Facts

Petitioner's conviction arises out of a robbery and shooting at the Cross County Inn in Southgate, Michigan. Brian Major testified that he was employed as a janitor at the inn. On the morning of January 1, 2001, Petitioner and another man, who Major later identified as co-defendant Johnny Frank O'Bannon, entered the front office, requested coffee, and then left. Fifteen to twenty minutes later, Major saw the men in the parking lot. Petitioner got into a car. O'Bannon approached Major, tapped him on the wallet, and

asked him what he had. Major stated that he had nothing. As Major reached for his wallet, O'Bannon shot him in the back. Major fell to the ground. O'Bannon shot him again in the head. Major testified that he later discovered that twenty dollars was missing from his shirt pocket.

Arlene Stafford testified that she was a front desk attendant at the inn. She saw Petitioner and O'Bannon sitting in the hotel lobby. O'Bannon approached her, took out a gun, and told her he wanted her money. She observed Petitioner move toward the hotel safe and heard the dial moving. Stafford pushed O'Bannon, who cocked the gun and placed it to her chest. After another employee begged O'Bannon not to shoot Stafford, he withdrew the gun and stepped out of the office. Stafford remained in the office, locked the office door, and called 911.

Police officer Charles Castle testified that the men were believed to have fled the scene in a green Ford Escort. Koreen Korbin testified that she had known O'Bannon since 1982. She owned a green Ford Escort. On the afternoon of December 31, 2005, O'Bannon told her that he and Petitioner were going to a sporting goods store to purchase bullets for his gun. Later that evening, she, O'Bannon, Petitioner and his girlfriend celebrated New Year's Eve together. She and O'Bannon returned to her home at approximately 2:00 a.m. When Korbin awoke at approximately noon on New Year's day, O'Bannon and her car were gone. O'Bannon telephoned her several times during the day and told her he had made a mistake. She later met him at a hotel room, where O'Bannon told her that he and Petitioner attempted to rob a hotel. Initially, O'Bannon told her that

2

Petitioner had shot a man, but later admitted that he had done the shooting.

Petitioner did not testify in his own defense.

## II.  Procedural History

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of armed robbery and two counts of assault with intent to rob while armed.  On January 29, 2001, he was sentenced as a second-felony habitual offender to concurrent terms of sixteen to twenty-five years imprisonment for each of his convictions.

Petitioner filed an appeal of right in the Michigan Court of Appeals, presenting the following claims:

> I.  The trial court reversibly erred in granting the prosecutor's motion to amend the information to add a count of assault with intent to rob armed and denying appellant's motion to quash the information.
>
> II.  The trial court violated appellant's due process right to present a defense by granting co-counsel's motion to exclude admission of appellant's statement at trial.
>
> III.  Defense counsel's failure to move for a separate trial denied appellant the effective assistance of counsel.
>
> IV.  Introduction of witness Korbin's testimony of co-defendant O'Bannon's statements to her, without a limiting instruction, violated the hearsay rule and appellant's right to confrontation and to a fair trial. Counsel's failure to object constituted ineffective assistance.
>
> V.  Appellant was denied due process when the jury convicted him of armed robbery and assault with intent to rob armed on the basis of legally insufficient evidence.
>
> VI.  The trial court was in error for failure to give instruction on the cognate lesser included offense that was supported by the evidence, and trial

attorney requested.[1]

The Michigan Court of Appeals affirmed Petitioner's convictions. People v. Hill, No. 233208 (Mich. Ct. App. May 22, 2003).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, presenting the same claims presented to the Michigan Court of Appeals. The Michigan Supreme Court denied leave to appeal. People v. Hill, No. 124188 (Mich. Dec. 30, 2003).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the same claims presented on direct review in state court.

### III. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication

---

[1] This claim was raised in Petitioner's pro per supplemental brief.

of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. Franklin v. Francis, 144 F.3d 429 (6th Cir. 1998). Additionally, this court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[2]; *see also* Cremeans v. Chapleau, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

Williams v. Taylor, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." Id. at 409.

---

[2] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

5

The Court defined "unreasonable application" as follows:

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11.

With this standard in mind, the court proceeds to the merits of the petition for a writ of habeas corpus.

## IV.  Analysis

### A.  Amendment to the Information

In his first claim for habeas relief, Petitioner claims that the trial court erred in allowing the prosecutor to amend the information to include a count of assault with intent to rob while armed and in denying Petitioner's motion to quash the information.

Petitioner was originally charged with assault with intent to murder and armed robbery as to Brian Major, and assault with intent to rob while armed as to Arlene Stafford. Following a preliminary examination, the prosecution sought an additional charge of assault with intent to rob while armed as to Bobbie Williams. The trial court initially denied the request. On March 17, 2000, the trial court conducted a hearing on Petitioner's motion to quash the information. The prosecutor renewed his request to

amend the information to include an additional count of assault with intent to rob while armed. The trial court granted the request.

On direct appeal, the Michigan Court of Appeals held that the trial court did not err in permitting the additional charge. The state court held that Petitioner was on notice that the prosecution intended to charge a second count of assault to rob while armed, and that the evidence presented at the preliminary examination supported both counts. Hill, slip op. at 1-2. A complaint or indictment "which fairly but imperfectly informs the accused of the offense for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." Mira v. Marshall, 806 F.2d 636, 639 (6th Cir. 1986). In this case, the information, which was amended approximately nine months prior to trial, placed Petitioner on notice of the offenses for which he was being charged. Petitioner has failed to show that the Michigan Court of Appeals' decision that he had notice of the charges against him was contrary to or an unreasonable application of Supreme Court precedent. Therefore, he is not entitled to habeas corpus relief with respect to this claim.

Petitioner also claims that the trial court erred in binding him over for trial following the preliminary examination because insufficient evidence was presented to support the charges. The Michigan Court of Appeals also held that the evidence presented at the preliminary examination established probable cause to bind defendant over on the charges against him. A criminal defendant has no constitutional right to a preliminary hearing. Gerstein v. Pugh, 420 U.S. 103, 125 n.26 (1975); Dillard v. Bomar,

342 F.2d 789, 790 (6th Cir. 1965). Thus, Petitioner's claim that the bind over was improper raises a matter of state law and cannot form a basis for federal habeas corpus relief. Estelle v. McGuire, 502 U.S. 62, 67 (1991), *("'[F]ederal habeas corpus review does not lie for errors of state law.'") (quoting* Louis v. Jeffers, 497 U.S. 764, 780 (1990)).

### B. Right to Present a Defense

Petitioner claims entitlement to habeas relief because the trial court excluded his statement to police. Petitioner sought to admit his written statement to police sergeant Charles Castle, which supported his defense that he was merely present and that any participation by him in the crimes was motivated by threats on his own life by O'Bannon, as a statement against penal interest under Michigan Rule of Evidence 804(b)(3). The trial court excluded the testimony because it was given under circumstances which called into question its reliability. Petitioner argues that the exclusion of his statement implicated his right to present a defense.

The right of a defendant to present a defense has long been recognized as "a fundamental element of due process of law." Washington v. State, 388 U.S. 14, 19 (1967). It is one of the "minimum essentials of a fair trial." Chambers v. Mississippi, 410 U.S. 284, 294 (1973). The Supreme Court has described the "most basic ingredients of due process of law" as follows:

> "A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense -- a right to his day in court -- are basic in our system of jurisprudence; and these rights include, as a

> minimum, a right to examine the witnesses against him, to offer testimony, and to be represented by counsel."

Washington v. Texas, 388 U.S. 14, 18 (1967) (emphasis supplied), *quoting* In re Oliver, 333 U.S. 257 (1948).

> Further, the Supreme Court described the right to present a defense as follows:
>
> The right to offer testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

Id.

This Court recognizes that, while the right to present a defense is a fundamental tenet of due process, "a defendant's right to present evidence is not unlimited, but rather is subject to reasonable restrictions." United States v. Scheffer, 118 S. Ct. 1261, 1264 (1998). Indeed, "[a] defendant's interest in presenting . . . evidence may thus bow to accommodate other legitimate interests in the criminal trial process." Id. (internal quotations omitted). However, the exclusion of evidence is unconstitutional where it "infringe[s] upon a weighty interest of the accused." Id., *citing* Rock v. Arkansas, 483 U.S. 44, 58 (1987); *see also* Chambers v. Mississippi, 410 U.S. 283, 302 (1973); Washington v. Texas, 388 U.S. 14, 22-23 (1967).

In determining whether the exclusion of evidence infringes upon a weighty interest of the accused, the court's role is not to determine whether the excluded evidence would

9

have caused the jury to reach a different result. Davis v. Alaska, 415 U.S. 300, 317 (1973). Instead, the question is whether the defendant was afforded "'a meaningful opportunity to present a complete defense.'" Crane v. Kentucky, 476 U.S. 683, 690 (1986), *quoting* California v. Trombetta, 467 U.S. 479, 485 (1984). The prosecutor's case must "encounter and 'survive the crucible of meaningful adversarial testing.'" Id. at 690-691 (1984), *quoting* United States v. Cronic, 466 U.S. 648, 656 (1984).

The Michigan Court of Appeals held that the trial court did not err in declining to admit Petitioner's custodial statement. The Court of Appeals held that the statement was inadmissible because Petitioner was not unavailable under Michigan Rule of Evidence 804(b)(3). The Court of Appeals reasoned as follows:

> In considering admissibility of a statement under M.R.E. 804(b)(3), a reviewing court must determine whether the declarant was unavailable, whether the statement was against his penal interest and whether a reasonable person in his position would have believed that the statement was true. . . .
>
> . . . Defendant's alleged unavailability is predicated on his assertion of this Fifth Amendment right not to testify at trial. We conclude that defendant's assertion of this privilege did not render him unavailable for purposes of allowing him to introduce his own former statement under M.R.E. 804(b)(3).
>
> M.R.E. 804(a) provides, in pertinent part:
>
>> A declarant is not unavailable as a witness if exemption, refusal, claim of lack of memory, inability, or absence is due to the procurement or wrongdoing of the proponent of a statement for the purpose of preventing a witness from testifying.
>
> Here, defendant was the proponent of his own statement and purposefully procured his own absence by electing not to testify.

10

> A similar situation was addressed in United States v. Cucci, unpublished opinion of the Fourth Circuit Court of Appeals, issued September 3, 1993 (Docket Nos. 92-5533 and 92-5534); 1993 U.S. App. Lexis 22538, wherein the court stated:
>
>> . . . Rule 804 was not intended to allow a *defendant* to have the advantages of having his statements introduced at trial without the disadvantages of cross-examination and impeachment. . . . Nor does the text of 804 contemplate allowing a *defendant* invoking the Fifth Amendment to admit his *own statements* under a hearsay exception. . . . [Emphasis in original.]
>
> . . . We therefore conclude that defendant was not "unavailable" and, accordingly, his statement was not admissible under M.R.E. 804(b)(3).

Hill, slip op. at 2-3.

When a defendant chooses not to testify, "he has made himself unavailable to any other party, but he is not unavailable to himself." U.S. v. Peterson, 100 F.3d 7, 13 (2d 1996). *Accord* U.S. v. Bollin, 264 F.3d 391, 413 (4th Cir. 2001); U.S. v. Kimball, 15 F.3d 54, 55-56 (5th Cir. 1994). The state court's holding that Petitioner's statement was properly excluded because it was inadmissible hearsay was a reasonable restriction on the admission of evidence. As such, its exclusion did not impinge upon Petitioner' right to present a defense. Habeas relief shall be denied on this claim.

### C. Alleged Confrontation Clause Violation

Petitioner claims that the trial court improperly admitted hearsay statements made by co-defendant O'Bannon to O'Bannon's girlfriend. The trial court admitted the statements under the statements against penal interest exception to the rule against hearsay. Petitioner maintains that the admission of these statements violated his Sixth Amendment right of confrontation. He further alleges that his attorney was ineffective in

failing to object to their admission.

The Michigan Court of Appeals held that the statements were properly admitted. The state court held that the statements were against O'Bannon's penal interest because he stated that he tried to rob a motel and shot someone. The court then considered the circumstances surrounding O'Bannon's statements to evaluate their reliability. O'Bannon admitted to his girlfriend that he was the shooter. He never denied making the statement. The statement was made to a trusted person, his girlfriend, with whom O'Bannon likely would be truthful. It was made on the night of the shooting, and was made voluntarily and spontaneously. Further, the state court considered that there was no suggestion that he was attempting to curry favor by admitting to this crime. Considering all of these circumstances, the Michigan Court of Appeals held that O'Bannon's statement "had particularized guarantees of trustworthiness and, therefore, could be used to inculpate defendant without violating his right of confrontation." Hill, slip op. at 4.

The Confrontation Clause of the Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. "The Sixth Amendment's right of an accused to confront the witnesses against him is . . . a fundamental right and is made obligatory on the States by the Fourteenth Amendment." Pointer v. Texas, 380 U.S. 400, 403 (1965). The rights of confrontation and cross-examination "have ancient roots" which the "Court has been zealous to protect . . . from erosion." Id., at 404-05 (internal quotation omitted). The right to a trial by jury is predicated upon the belief "'that the 'evidence developed'

12

against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross examination, and of counsel.'" Id. at 405, *quoting* Turner v. State of Louisiana, 379 U.S. 466, 472-73 (1965).

Statements by a non-testifying co-defendant that implicate a defendant are presumptively unreliable. Douglas v. Alabama, 380 U.S. 415, 419 (1965). But, out-of-court statements may be admitted at trial even if the defendant had no opportunity for cross-examination where the declarant is shown to be unavailable and the statement bears "adequate indicia of reliability." Ohio v. Roberts, 448 U.S. 56, 66 (1980), *overruled* Crawford v. Washington, 541 U.S. 36 (2004).[3] An out-of-court statement bears a sufficient indicia of reliability when "the evidence falls within a firmly rooted hearsay exception," Roberts, 448 U.S. at 66, or "contains 'particular guarantees of trustworthiness' such that adversarial testing would be expected to add little, if anything, to the statements' reliability." Lilly v. Virginia, 527 U.S. 116, *quoting* Roberts, 448 U.S. at 66.

In this case, the Michigan Court of Appeals held that O'Bannon's statements bore "particularized guarantees of trustworthiness" rendering them admissible under the totality of the circumstances. Statements made to law enforcement officers are generally

---

[3] While the Supreme Court overruled Ohio v. Roberts in Crawford v. Washington, 541 U.S. 36 (2004), the Sixth Circuit Court of Appeals has held that Crawford does not apply retroactively to cases on collateral review. Dorchy v. Jones, 398 F.3d 783, 788 (6th Cir. 2005). Therefore, this Court must determine whether the state court's decision was contrary to Ohio v. Roberts.

suspect because they may be made to curry favor or given in a coercive atmosphere. See Latine v. Mann, 25 F.3d 1162, 1166-67 (2d Cir. 1994). O'Bannon's statements were made to his girlfriend, not law enforcement officers. His statements to his girlfriend were spontaneous and close in time to the crime. O'Bannon's statements were not self-serving, and, while he initially tried to minimize his involvement, he ultimately admitted to being the shooter. Thus, the Court concludes that the state court's finding that the statements bore sufficient indicia of reliability as to justify their admission was not contrary to or an unreasonable application of Supreme Court precedent.

Because O'Bannon's hearsay statements were properly admitted, Petitioner cannot establish that his trial attorney was ineffective in failing to object to their admission.

### D. Alleged Ineffective Assistance of Counsel

Petitioner next alleges that he is entitled to issuance of a writ of habeas corpus because his right to the effective assistance of counsel was violated. Specifically, Petitioner claims that his attorney erred in failing to move for a separate trial from co-defendant O'Bannon. Petitioner claims that his and O'Bannon's defenses were antagonistic and his rights to present a defense and to confront witnesses against him were violated as a result of the joint trial.

To establish that he received ineffective assistance of counsel, a petitioner must show, first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the petitioner. Strickland v. Washington, 466 U.S. 668, 687 (1984). A petitioner may show that counsel's performance was deficient by establishing

that counsel's performance was "outside the wide range of professionally competent assistance." Id. at 689. This "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." Id. at 687. To satisfy the prejudice prong, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. "[T]he focus should be on whether the result of the trial was 'fundamentally unfair or unreliable.'" Tinsley v. Million, 399 F.3d 796, 802 (6th Cir. 2005), *quoting* Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The Michigan Court of Appeals held that trial counsel was not ineffective in failing to move to sever the trials because Petitioner's defense was not harmed by the joint trial. The state court reasoned:

> [D]efendant's theory at trial was that codefendant O'Bannon was the perpetrator of the charged crimes and that he (defendant) was merely present and did not voluntarily do anything to assist in the commission of the crimes. In contrast, codefendant O'Bannon pursued a defense of mistaken identity. To the extent a basis for severance could legitimately have been argued, defendant has not overcome the presumption that counsel's decision not to request severance was a matter of trial strategy. The evidence at trial pointed to codefendant O'Bannon as the principal perpetrator, and tended to depict defendant's role as secondary or peripheral. Counsel reasonably may have believed that a joint trial would highlight codefendant O'Bannon's involvement and minimize defendant's involvement, thereby lending support to defendant's mere presence defense. Indeed this strategy appears to have been partially successful, because defendant was acquitted of the most serious offense of assault with intent to commit murder. Further, . . . O'Bannon's statements to his girlfriend would have been admissible against defendant, even had he been tried separately. Because defendant has failed to overcome the presumption of sound trial

strategy, his ineffective assistance of counsel claim must fail. Hill, slip op. at 4.

The state court, although not specifically citing Strickland, clearly applied the standard articulated therein.  Given that the key evidence against Petitioner, O'Bannon's out-of-court statement to his girlfriend would have been admissible even if the trials had been severed, Petitioner fails to show how he was prejudiced by his attorney's decision not to request severance.  In addition, as stated by the Michigan Court of Appeals, Petitioner's defense may have benefitted from the joint trial because O'Bannon was portrayed as the far more culpable party, thereby minimizing Petitioner's involvement.  Thus, the Court concludes that the state court's finding that counsel was not ineffective in failing to move for severance was not contrary to or an unreasonable application of Strickland.

### E.  Sufficiency of the Evidence

Petitioner next claims that the prosecutor presented insufficient evidence to sustain his convictions.

In Jackson v. Virginia, 443 U.S. 307 (1979), the Supreme Court established that the standard of review for a sufficiency of the evidence challenge must focus on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at 319 (emphasis in original).  Pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the Jackson standard was contrary

to or an unreasonable application of Supreme Court precedent. In making this determination, this Court must afford the state court's findings of fact a presumption of correctness unless it is established by clear and convincing evidence that the factual determination in the state court was erroneous. 28 U.S.C. § 2254(e)(1); West v. Seabold, 73 F.3d 81, 83 (6th Cir. 1996), *cert. denied*, 116 S. Ct. 2569 (1996).

The last state court to issue a reasoned opinion regarding Petitioner's sufficiency of the evidence claim, the Michigan Court of Appeals, stated, in relevant part:

> The sufficiency of the evidence is to be evaluated by reviewing the evidence in the light most favorable tot he prosecution. People v. Petrella, 424 Mich. 221, 268-270; 380 N.W.2d 11 (1985). The test is whether a rational trier of fact could find every element of the crime proven beyond a reasonable doubt. Id.
>
> At trial, evidence was presented that defendants jointly purchased bullets for codefendant O'Bannon's gun before the crime, that they arrived together at the motel, and that they both entered the motel office. Codefendant O'Bannon announced a robbery and produced a gun. He pointed the gun at the two women in the office and threatened to shoot them. Defendant, with knowledge of codefendant O'Bannon's intent, attempted to open the safe. Viewed in a light most favorable to the prosecutor, the evidence was sufficient to enable a reasonable jury to find, beyond a reasonable doubt, that defendant and codefendant O'Bannon were acting together as part of a common plan to rob the motel and that defendant assisted codefendant O'Bannon by accompanying him into the motel office and attempting to open the safe. . . .
>
> Further, after the two defendants were unsuccessful in their efforts to rob the motel, codefendant O'Bannon approached the motel maintenance man in the parking lot, struck him, and asked if he had any money. Codefendant O'Bannon then shot him in the back. A witness saw one of the two defendants standing over the maintenance man, going through his pockets, before shooting him again in the face, and the maintenance man later reported money missing from his shirt pocket. Witnesses saw one or both of the defendant doing something in the rear of the car, perhaps putting

>    something in the trunk or covering the license plate, and both defendants
>    fled together. Following a police chase, both defendants fled from the car.
>    The police found defendant hiding nearby. Later that night, codefendant
>    O'Bannon confessed the crime to his girlfriend. Viewed in a light most
>    favorable to the prosecution, we believe the evidence was sufficient to
>    establish defendant's complicity in the armed robbery of the maintenance
>    man, beyond a reasonable doubt.

Hill, slip op. at 5.

The Court finds this well-reasoned disposition of Petitioner's sufficiency of the evidence claim was neither contrary to nor or an unreasonable application of clearly established federal law. The Court of Appeals described the facts in light of the elements of the crime and explained and supported its conclusion that a rational trier of fact could have found Petitioner guilty beyond a reasonable doubt. Petitioner has not presented any new evidence to show that the state court's findings of fact were erroneous. Therefore, according the state court's factual findings a presumption of correctness, *see* 28 U.S.C. § 2254(e)(1), this Court concludes that the state court of appeals' decision that all of the elements of the crime were satisfied did not "result[] in a decision that . . . involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

### F.  Jury Instruction

Finally, Petitioner claims that the trial court erred in denying his request for an instruction on attempted larceny in a building, as a lesser offense of assault with intent to rob while armed.

While the failure to instruct on a lesser included offense can constitute

constitutional error in a capital case, Beck v. Alabama, 447 U.S. 625, 638 (1980), the Supreme Court has specifically declined to decide whether such a requirement applies in non-capital cases. Id. n.14. Habeas relief may only be granted where a state court's decision is "contrary to or involved an unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d). Petitioner cannot show that the state court's decision denying an attempted larceny in a building instruction was contrary to or an unreasonable application of Supreme Court precedent where Supreme Court precedent does not require a cognate lesser included offense instruction in non-capital cases.

## V. Conclusion

The decision of the Michigan Court of Appeals in affirming Petitioner's convictions was not contrary to or an unreasonable application of clearly established Federal law. Accordingly, **IT IS ORDERED** that the petition for a writ of habeas corpus is **DENIED** and the matter is **DISMISSED WITH PREJUDICE**.

s/George Caram Steeh<br>
GEORGE CARAM STEEH<br>
UNITED STATES DISTRICT JUDGE

Dated: November 22, 2005

CERTIFICATE OF SERVICE

Copies of this Order were served on the attorneys of record on November 22, 2005, by electronic and/or ordinary mail.

s/Josephine Chaffee<br>
Secretary/Deputy Clerk